Mike MEOLI, an individual, and on behalf of all Plans participants and beneficiaries of the Plans, Plaintiffs,

v.

AMERICAN MEDICAL SERVICES OF SAN DIEGO, et al., Defendants.

Robert Mayorga, Stanley Kaufman and Daniel Lynch, Counterclaimants,

v.

Mike Meoli and John Pringle, Counterdefendants.

No. 97CV1222 BTM(JAH).
United States District Court,
S.D. California.

Feb. 11, 1999.

Thomas M. Monson, Susan L. Horner, Miller, Monson & Peshel, San Diego, CA, for plaintiffs.

Marc S. Schechter, Julia A. Nickerson, Hinchy, Witte, Wood, Anderson & Hodges, San Diego, CA, for defendants.

## AMENDED ORDER GRANTING COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIM

MOSKOWITZ, District Judge.

This matter comes before the Court on counterdefendants' motion to dismiss. For the reasons set forth below, the Court holds that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, does not accord an ERISA fiduciary the right to seek indemnity from a co-fiduciary for breach of fiduciary duty. Accordingly, the motion to dismiss is GRANTED.

### I.  Background

■ This case involves employee benefit plans (collectively "Plans")[1] covered by ERISA. Plaintiff Mike Meoli, an asserted Plans participant, brings a class claim on behalf of all Plans participants and beneficiaries alleging, among other things, breach of fiduciary duty. The defendants are several individuals, business entities, and Plans trustees alleged to have played a role in management and administration of the Plans. On June 17, 1998, defendants Robert Mayorga, Stanley Kaufman, and Daniel Lynch (collectively "trustees") filed a counterclaim against Meoli and another Plans participant, John Pringle ("plaintiffs"). According to the counterclaim, Mayorga and Lynch were the original named trustees of the Plans. Kaufman succeeded them in 1996 and remained in that position until replaced by the Court. The counterclaim seeks a judicial declaration that (1) plaintiffs are Plans "fiduciaries" or "co-fiduciaries" within the meaning of ERISA, (2) plaintiffs breached fiduciary duties owed under ERISA, and (3) plaintiffs are required "to partially or fully indemnify [the trustees] for any sums that [the trustees] may be compelled to pay as the result of any damages, judgment, or other awards recovered by the Plaintiff Class" against the trustees. The trustees allege that plaintiffs are liable under ERISA because of their activities while serving on an "Advisory Committee" that allegedly made decisions related to the Plans. A representative sampling of plaintiffs' alleged breaches of fiduciary duty in that capacity includes their failure to (1) "direct the trustee to take any action against the employer to collect delinquent employer contributions," (2) "give notice to the Plans' participants that the 401(k) Plan was not being properly funded," and (3) "remedy the violations after grievances were filed by participants."[2]

### II.  Indemnity Under ERISA

■ A person held liable under a federal statute has a right to indemnity from another only if the right arises "through the affirmative creation of a right of action by Congress, either expressly or implicitly," or under federal common law. *Doherty v. Wireless Broadcasting Sys.*, 151 F.3d 1129, 1130–31 (9th Cir.1998). The question whether the trustees state a claim for relief under ERISA

---

1.  The Plans are the 401(k) profit sharing plan and the employee retention plan.

2.  While the trustees steer clear of the term "contribution," the counterclaim in substance asserts a right to both indemnity and contribution. When the trustees allege various breaches of fiduciary duty by plaintiffs that are unrelated to the trustees' alleged wrongdoing, but are asserted to have caused the same harm, the claim amounts to one for contribution. Indeed, the counterclaim states that the trustees seek a declaration of the "comparative liability" of plaintiffs and the trustees "for damages." This sounds like contribution even if it is couched in terms of indemnity. To the extent the trustees' claim is for contribution, it clearly fails to state a claim under *Kim v. Fujikawa*, 871 F.2d 1427, 1432–33 (9th Cir.1989) and *Call v. Sumitomo Bank*, 881 F.2d 626, 630–31 (9th Cir.1989). As the trustees acknowledge, these cases hold that ERISA does not permit contribution between co-fiduciaries. While the trustees' indemnity claim is dealt with above on its merits, the difference between indemnity and contribution may be more theoretical than real. *See Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1032 (9th Cir.1992) ("The plain, unambiguous meaning of 'indemnify' is ... merely 'to compensate.'").

is discussed first.[3]

The indemnity that the trustees seek is presumably some form of equitable indemnity because no written instrument supporting the counterclaim is identified. ERISA does not expressly deal with equitable indemnity and neither the United States Supreme Court nor the United States Court of Appeals for the Ninth Circuit has addressed whether any ERISA provision implicitly grants a fiduciary the right to seek indemnity from a co-fiduciary. However, it appears that the majority of courts to face the issue have rejected that conclusion. *See generally* John A. Pereira, Note, *A Fiduciary's Right to Contribution or Indemnity Under ERISA*, 21 OKLA. CITY U.L.REV. 507 (1996); *Schrader v. Hamilton*, 959 F.Supp. 1205, 1210 n. 8 (C.D.Cal.1997) (collecting cases). In the main, the decisions turning back claims for indemnity have emphasized the comprehensive nature of ERISA's enforcement scheme and concluded that Congress did not intend any remedies not expressly provided. *See, e.g., Rossio v. Massachusetts Mut. Life Ins. Co.*, 789 F.Supp. 1047 (E.D.Cal.1992).

The trustees nonetheless urge the Court to find a right to indemnity in 29 U.S.C. § 1132(a)(3). That subsection provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Specifically, the question is whether "other appropriate equitable relief" includes inter-fiduciary indemnity.[4] The trustees rely on *Youngberg v. Bekins Co.*, 930 F.Supp. 1396 (E.D.Cal.1996), which recognized a limited right of indemnity under subsection (a)(3). *Youngberg* read the Supreme Court's recent decision in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) as permitting a liberal reading of that provision. *Youngberg*, 930 F.Supp. at 1400 (reasoning that *Varity* supports "individualized equitable relief" under subsection (a)(3)). The *Youngberg* court concluded that as a matter of statutory construction, "other appropriate equitable relief" includes indemnity between co-fiduciaries because indemnity is an indisputably "equitable" remedy and the claim in that case sought "redress for a violation of the plan." *Id.* at 1401. However, the court in *Youngberg* recognized that ERISA does not permit a fiduciary a remedy for breaching a fiduciary duty. *Id.* at 1403. This is precisely what the trustees seek here. They are alleged to have violated their fiduciary duties and they seek to remedy any such liability by receiving indemnification.

In this Court's view, subsection (a)(3) cannot fairly be read to support a claim for indemnity against a co-fiduciary under the facts of this case. Subsection (a)(3) enables a participant, beneficiary, or fiduciary to seek "other appropriate equitable relief," but only for a particular purpose—"to redress such violations." "Such violations," in turn, refers to the antecedent statutory phrase "any act or practice which violates any provision of this subchapter or the terms of the plan." These are critical words of limitation. Even assuming that indemnity is an "appropriate" equitable remedy within the

---

3. Plaintiffs suggest that former trustees Mayorga and Lynch lack standing to sue under ERISA because they were not trustees at the time plaintiffs' suit was filed in 1997 and that, in any event, there is no basis for indemnity because the trustees claim to sue here as Plans participants, not fiduciaries. T' Court assumes, without deciding, that the ...es have standing to seek indemnity unde ERISA and bring this suit as fiduciaries rather than Plans participants. Plaintiffs' objections are immaterial because, as explained above, the Court holds that ERISA's remedial scheme does not afford a right to inter-fiduciary indemnity for breach of fiduciary duty.

4. The parties focus on subsection (a)(3) as the only possible location in ERISA for a right to indemnity from a co-fiduciary. The Court agrees that this right is to be found, if anywhere, in that provision. Subsection (a)(3) is a "catchall" clause that gives courts ore leeway in fashioning remedies than the otl , emedial subsections in 29 U.S.C. § 1132. *See Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

meaning of this section (a questionable proposition for reasons explained below), indemnity does not redress a fiduciary breach or a violation of the terms of an ERISA-covered plan as the statute requires. Rather, it rectifies the perceived unfairness of placing the loss on a party who is liable only because of the actions of another: "The doctrine of equitable indemnification exists properly to allocate damage recovery among parties who are not equally at fault. In order to avoid unjust enrichment of the tortfeasor, the doctrine makes him pay for the injury which has made another liable." *Flunker v. United States*, 528 F.2d 239, 245 (9th Cir.1975) (citation omitted). Equitable indemnity is, thus, in any case primarily, if not entirely, for the benefit of the party who seeks it. Because the trustees have not explained how interfiduciary indemnity redresses "any act or practice which violates any provision of this subchapter or the terms of the plan," indemnity cannot be "other appropriate equitable relief" as a simple matter of statutory interpretation.[5]

This reading is consistent with ERISA's underlying policies. As other courts rejecting indemnity under ERISA have summarized: "An analysis of ERISA reveals an intent to protect participants, beneficiaries and plans, and remedies are provided to fiduciaries only insofar as they advance that purpose." *NARDA, Inc. v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.Supp. 685, 696 (D.Md.1990). *See also General Amer. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1523 (9th Cir.1993) ("One of the key principles underlying ERISA is that trustees must be devoted *solely* to the interest of plan beneficiaries.") (footnote and citations omitted). In *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989), the Ninth Circuit, in holding that fiduciaries do not have a right to contribution from co-fiduciaries under ERISA, stated:

> Indeed, implying a right of contribution is particularly inappropriate where, as in this case, the party seeking contribution is a member of the class [e.g., fiduciaries] whose activities Congress intended to regulate for the protection and benefit of an

entirely distinct class [e.g., ERISA plans], and where there is no indication in the legislative history that Congress was concerned with softening the blow on joint wrongdoers.

*Id.* at 1433 (bracketed language in original and citation and internal quotation marks omitted). Implying a right to indemnification would not be consistent with ERISA's goal of deterring breaches of fiduciary duty. In addition, there appears no reason to imply a right by a fiduciary to indemnification when there is no right to contribution. As Learned Hand noted, indemnity is "only an extreme form of contribution." *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2d Cir.1951).

*Varity*, also relied on by the trustees, does not suggest a different result. *Varity* upheld an order issued under subsection (a)(3) that reinstated the employees' rights under their former ERISA-covered plan where their former employer had fraudulently induced them to change jobs and forfeit their original benefits. The core question presented was whether subsection (a)(3) allows relief for the individual plan participants or limits "other appropriate equitable relief" to remedies on behalf of the plan. *Varity*, 516 U.S. at 508–10, 116 S.Ct. 1065. *Varity* established that subsection (a)(3) permits courts to fashion specifically-tailored equitable remedies to protect the interests of individual plan participants. This is a different proposition from saying, as the trustees seem to urge, that any "individual" equitable remedy can be created pursuant to subsection (a)(3). As already discussed, the statutory language belies that interpretation. The following caveat in *Varity* is instructive: "We should expect that courts, in fashioning appropriate equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Id.* at 515, 116 S.Ct. 1065 (citation and internal quotation marks omitted). For all of these reasons, the Court

---

5. There is no need here to decide what relief is permitted under subsection (a)(3), but ERISA's legislative history suggests that "other appropriate equitable relief" includes injunctions, constructive trusts, and removal of the trustee. *Sokol v. Bernstein*, 803 F.2d 532, 538 (9th Cir.1986).

concludes that inter-fiduciary indemnity is not the sort of "individual" remedy that was envisioned when 29 U.S.C. § 1132(a)(3) was drafted.[6]

### III. Indemnity under Federal Common Law

"The creation of a right under federal common law is appropriate only where there are unique federal interests at stake." *Doherty v. Wireless Broadcasting Sys.*, 151 F.3d 1129, 1131 (9th Cir.1998) (citations omitted). With respect to ERISA in particular, "courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of state law when appropriate, but governed by the federal policies at issue." *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 (9th Cir.1984). The same factors cutting against a statutory right to indemnity point to rejecting indemnity under federal common law. The trustees have not identified any ERISA policy that favors creation of the right; and, as other courts facing this issue have concluded, no particular federal interest is implicated. *Rossio v. Massachusetts Mut. Life Ins. Co.*, 789 F.Supp. 1047, 1051–52 (E.D.Cal.1992); *cf. Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 17 (2d Cir. 1991) (recognizing indemnity between co-fiduciaries but acknowledging that "no unique federal interest is involved"). The Court declines to append a common-law right to inter-fiduciary indemnity to ERISA's remedial scheme.

### IV. Conclusion and Order

Taking the trustees' allegations as true, the Court concludes that the counterclaim fails to state a claim for relief. FED.R.CIV.P. 12(b)(6). Accordingly, plaintiffs' motion to dismiss the counterclaim is GRANTED with prejudice.

**IT IS SO ORDERED.**

---

**6.** Some courts recognizing equitable indemnity under ERISA have essentially adopted wholesale the common law of trusts. *See, e.g., Maher v. Strachan Shipping Co.*, 817 F.Supp. 43 (E.D.La. 1993). ERISA indeed "abounds with the language and terminology of trust law." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Nonetheless, as *Varity* recently confirmed, the statute's "cafeteria" approach to the common law—taking some rights and remedies while leaving others—counsels a healthy skepticism towards anything that is not expressly codified.